**BRIARCLIFF HAVEN, INC., on behalf of itself and all others similarly situated, Plaintiff,**

v.

**DEPARTMENT OF HUMAN RESOURCES OF the STATE OF GEORGIA, et al., Defendants.**

**No. C75—429A.**

United States District Court,
N. D. Georgia,
Atlanta Division.
Oct. 30, 1975.

J. Corbett Peek, Jr., Peek, Arnold, Whaley & Cate, Atlanta, Ga., for plaintiff.

Stephen L. Cotter, Deputy Asst. Atty. Gen., Julian Longley, Asst. U. S. Atty., Atlanta, Ga., for defendants.

## ORDER OF COURT

MOYE, District Judge.

This is an action for declaratory, injunctive, and other relief filed by Briarcliff Haven, Inc. [Briarcliff] against the Department of Human Resources of the State of Georgia [DHR], David Matthews, Secretary of the Department of Health, Education and Welfare [HEW], and others, in which Briarcliff alleges two related causes of action. First, Briarcliff claims, in its original complaint, that provisions in the Georgia Medical Assistance [Medicaid] Plan which deal with reimbursements to nursing homes and intermediate care facilities are unfair to plaintiff and violate the Federal Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. 1396 et seq. [the Act]. Second, in its amended complaint, Briarcliff raises additional issues regarding the legal import of certain provisions of the Nursing Home Services Manual [Manual] and the Georgia Provider Agreement alleging that the subject provisions are in violation of Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, 1396a.

Briarcliff has filed a motion for leave to amend complaint seeking to have David Matthews, newly appointed successor to Caspar Weinberger as Secretary of HEW, made a party defendant and seeking to strike certain paragraphs of the original complaint alleging sums due to the plaintiff for the year 1974. Plain-

tiff's motion to amend complaint is hereby granted.

The case is presently before the Court on the State and Federal defendants' motions to dismiss both the original and amended complaint. As a preliminary matter the Court notes that Briarcliff has failed to respond to the Federal defendants' motion to dismiss the original complaint filed on May 2, 1975. Therefore, the Court considers the motion unopposed. See Local Rule 91.2. Accordingly, defendant David Matthews's motion to dismiss is hereby ordered granted.

Briarcliff Haven, Inc., owns and operates a skilled nursing home that participates as a provider of skilled nursing home services under the Georgia Medicaid program. Defendant Georgia Department of Human Resources is the single state agency designated pursuant to the Medicaid Act to run the Medicaid program in Georgia. The federal-state Medicaid program, provided for under Title XIX of the Social Security Act, requires states wishing to participate in the program to submit a state plan which meets the conditions specified in the Act and in the implementing of federal regulations. Under the Act, upon acceptance of the state plan, each participating state has the responsibility for administering its own Medicaid program. Therefore, within the parameters established by the Act and the implementing regulations, the state determines the eligibility requirements for medical assistance; which state residents qualify as Medicaid recipients; the scope and duration of services for which the state Medicaid agency will make payment; the criteria which "providers of services" must meet before the state will enter into a "provider agreement" enabling a provider to participate in the program; and the amount of reimbursement that the state will make to participating providers for furnishing covered services to the state's Medicaid recipients.

The Georgia Title XIX Plan at issue, which became effective on December 1, 1974, established that reimbursement for skilled nursing facility services after December 1, 1974, be based on the Medicare, Title XVIII of the Social Security Act, "allowable cost" formula with certain adjustments. The "allowable cost" approach is essentially an attempt at reimbursing a provider on the basis of its actual cost of providing covered services to Medicaid patients, within statutory upper limits. However, in addition, the Georgia Title XIX Plan puts a ceiling on such costs at the level of $550 per patient per month for skilled nursing facilities and $500 per patient per month for intermediate care facilities.

Moreover, the Manual requires that each provider enter into a provider agreement before being permitted to participate in the Medicaid program. This provider agreement is best construed as a business contract between the State and each provider by which their participation in the Georgia Medicaid program is defined. In August 1975 the defendant DHR presented new provider agreements to the plaintiff and advised plaintiff that such agreements must be executed and returned to DHR on or before August 31, 1975, if plaintiff desired to continue participation in the Medicaid program. The provisions of the new Provider Agreement at issue state the following:

\*       \*       \*       \*       \*       \*

"6. The amount of reimbursement authorized to be made by the State Agency to the Provider for medical or remedial care or services rendered pursuant hereto shall be determined by the provisions of the Manual and as otherwise provided herein. The State Agency may, after giving proper notice, reduce the amount of reimbursement which otherwise would be authorized but for the provisions of this paragraph. The State Agency may reduce the amount of reimbursement authorized for medical or remedial care or services ren-

dered pursuant to paragraph 1 hereof by factoring the amount of reimbursement, which would otherwise be paid, by a fraction determined by the State Agency and approved by the Office of Planning and Budget of the State of Georgia. The State Agency may increase or decrease the amount of reimbursement authorized as often as it deems advisable during the term of this Provider Agreement. Increases or decreases in the amount of reimbursement authorized shall be determined by resolutions adopted by the Board of Human Resources. No decrease in the amount of reimbursement authorized shall be made for medical or remedial care or services rendered prior to the effective date of any decrease, which date shall be set forth in the Resolution of the Board of Human Resources authorizing the decrease. No reduction in the amount of reimbursement authorized shall be made for medical or remedial care or services rendered prior to the effective date of any decrease, which date shall be set forth in the Resolution of the Board of Human Resources authorizing the decrease. No reduction in the amount of reimbursement authorized shall be made effective for medical or remedial care or services rendered within thirty (30) days after the adoption of the resolution decreasing the amount of reimbursement authorized.

"7. Proper notice under the preceding paragraph shall consist of the adoption of a resolution by the Board of Human Resources reducing the amount of reimbursement authorized for described medical or remedial care or services rendered thirty (30) days after the date of the resolution. Within ten (10) days after the adoption of such a resolution, a copy thereof shall be mailed to the Provider's address set forth herein.

"8. Should the State Agency determine that it no longer desires to authorize reimbursement for the medical or remedial care or services described in the Manual under the Georgia Medical Assistance Program, proper notice of such a decision, given in accordance with the procedures set forth in the preceding paragraph .7, shall terminate this Provider Agreement.

"9. Notwithstanding any other provision of this Provider Agreement or of the Manual, in the event that either of the sources of reimbursement for medical assistance, appropriations from the General Assembly of the State of Georgia or the Congress of the United States of America, no longer exist or in the event the sum of all obligations of the State Agency incurred under this and all other Provider Agreements entered into pursuant to the Georgia State Plan for Medical Assistance equals or exceeds the balance, as of the date first written above, of such sources less one hundred dollars ($100.00), then this Provider Agreement shall immediately terminate without further obligation of the State Agency as of that moment. The certification by the Commissioner of the State Agency of the occurrence of either of the events stated above shall be conclusive."

\* \* \* \* \* \*

The challenged provision of the Manual, Section 104.2, provides that the State may immediately terminate nursing homes from Medicaid participation in cases of willful or grossly negligent noncompliance with the Manual's policies and procedures.

With regard to the reimbursement ceilings, plaintiff is not challenging the federal statutory provisions regarding reimbursement to nursing homes under the Medicaid Act. Rather, the issue before the Court is whether the maximum reimbursement ceilings established by the defendant DHR are in conflict with those statutory provisions.

Briarcliff contends that DHR's plan of reimbursement, particularly the ceilings placed on payments to providers, is in conflict with and contrary to the Act and implementing regulations. Briarcliff alleges that its actual costs per recipient exceed $550 per month and that it is unfair that the majority of participating nursing homes in Georgia, whose costs are below $550 per month, are reimbursed to the full extent of their costs while Briarcliff and other high cost nursing homes are not so reimbursed.

The plaintiff claims that Georgia's maximum reimbursement provision is contrary to the "free choice of provider" requirement found in the Medicaid Act at 42 U.S.C. § 1396a(a)(23). That section provides that a state plan for medical assistance must:

> "provide that any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services . . .."

Furthermore, Briarcliff contends that the maximum reimbursement provision in the Georgia Plan is in conflict with 42 U.S.C. § 1396a(a)(2) which provides that a state plan for medical assistance must:

> "provide for financial participation by the State equal to all of such non-Federal share or provide for distribution of funds from Federal or State sources, for carrying out the State plan, on an equalization or other basis which will assure that the lack of adequate funds from local sources will not result in

lowering the amount, duration, scope, or quality of care and services available under the plan . . .."

The defendant Department of Human Resources contends that the Georgia Medicaid Plan is in accordance with the federal Act and implementing regulations. DHR asserts that the Medicaid program is wholly optional with the State and that the State need only formulate and submit its Medicaid program to the federal authorities in order to receive appropriate federal funding for payment covered by the State Plan. Moreover, DHR claims that Title XIX does not require the State to pay all alleged costs of nursing home care, but rather, only places restrictions on the maximum State payment to nursing homes. See 42 U.S.C. §§ 1396b(h)(4), 1396d(a), 1396a (30). Thus, the defendant asserts, the State of Georgia has express statutory authority for establishing the fee structures presently in operation.

Briarcliff's amendment to its complaint challenges the validity of certain provisions dealing with provider reimbursement and termination found in the new Georgia Medicaid Provider Agreement and the new Nursing Home Services Manual issued by the defendant DHR. Briarcliff contends that the Agreements and Manual stipulate that a provider of Medicaid services may be terminated from participation in the Georgia Medicaid program without prior notice or an opportunity for a pretermination hearing. Briarcliff further alleges that the new Agreements provide that the State may decrease the level of reimbursement as it deems necessary to an amount lower than that prescribed in Title XIX and that the provider must accept this as compensation in full. Briarcliff contends that such provisions in the Provider Agreements are in violation of the due process and equal protection clauses of the United States Constitution and Title XIX of the Social Security Act, 42 U.S.C. § 1396a(a)(23).

Defendant DHR and defendant Matthews contend that a provider is afforded

prior notice of intent to terminate and an opportunity for a pretermination hearing under the Georgia Medicaid program pursuant to Section 502 of the Manual. The only instance of immediate termination, provided for in Paragraph 9 of the Provider Agreement, is when obligations of the State reach the balance of funds appropriated by the Georgia General Assembly for Medicaid benefits. The defendants assert that under these circumstances the Georgia Medicaid program must terminate inasmuch as the Georgia Constitution prohibits deficit financing. Ga.Code Ann. § 40–419. DHR asserts that Paragraph 9 of the Provider Agreement merely identifies for the provider those circumstances under which the Georgia Medicaid program, and thus the State's obligations to the plaintiff, must terminate. As for decreasing the reimbursement levels, DHR and Matthews contend that there is no minimum reimbursement level required by Title XIX and that Paragraph 6 of the Provider Agreement does make provision for a 30-day notice period regarding any decrease in the amount of reimbursement.

Furthermore, defendant Matthews claims that the new allegations in Briarcliff's amended complaint do not entitle Briarcliff to any relief as against HEW since none of the challenged provisions of the Provider Agreement violates any federal Medicaid requirements. Defendant Matthews asserts that it has no authority to approve or disapprove any Medicaid provider manuals, provider agreements, or similar state-issued documents. Matthews asserts that it must review and approve the State Medicaid Plan before federal Medicaid funds will be made available to the State, however, the revised Georgia Medicaid Plan, which the challenged documents are intended to implement, has only recently been submitted to HEW for approval.

There are two main issues presently before the Court. First, whether the maximum reimbursement ceilings established by the defendant DHR are in violation of Title XIX of the Social Security Act and the implementing regulations. Second, whether certain provisions in the new Georgia Medicaid Provider Agreement and new Nursing Home Services Manual dealing with provider reimbursement and termination are in violation of Title XIX of the Social Security Act and the implementing regulations.

■ (1) *Maximum Reimbursement Ceiling*—The opening section of the Medicaid Act indicates that Congress was cognizant of the fact that the states have limited resources to devote to the Medicaid program. 42 U.S.C. § 1396 states that Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, was enacted "[f]or the purpose of enabling each State, *as far as practicable under the conditions in such State,* to furnish . . medical assistance" to certain categories of needy persons. 42 U.S.C. § 1396 (emphasis added). Medical assistance is defined at 42 U.S.C. § 1396d as "payment of part or all of the cost" of specified care and services. The Supreme Court has consistently held that Congress was aware of the limitations on state resources when the statute was enacted, and the Court has emphasized that the states have always been free to establish the level of benefits that they desire to pay under similar social welfare programs. *E. g., Dandridge v. Williams,* 397 U.S. 471, 478, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1969); *Rosado v. Wyman,* 397 U.S. 397, 408, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1969); *King v. Smith,* 392 U.S. 309, 318, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1967). Thus, the starting point of the statutory analysis is a recognition that the federal law gives each state great latitude in dispensing its available funds. *Dandridge v. Williams, supra* 397 U.S. at 478, 90 S.Ct. 1153.

There are a number of federal requirements dealing wtih payments under the Medicaid Act. Generally, payments to providers are determined by each state, except as otherwise specifically provided under the Act.

■ The only federal statutory provision governing payment for a specific type of service under the Medicaid Act is found in 42 U.S.C. § 1396a(a)(13)(D), which requires full payment of the "reasonable cost" of inpatient hospital services. This section, dealing with inpatient hospital services, refers to the standard of reimbursement established under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395x(v) and the regulations implementing the Medicare Act, 20 C.F.R. 405.402–405.455. *See Conn. State Department of Public Welfare v. Department of Health, Education, and Welfare,* 448 F.2d 209 (2d Cir. 1971); *Mass. General Hosp. v. Sargent,* 397 F.Supp. 1056 (D.Mass.1975). However, for the services rendered by skilled nursing facilities such as Briarcliff Haven, Inc., the Act specifies only what the maximum payment may be under the program. Title 42 U.S.C. § 1396a(a)(30) requires the state "to assure that payments . . . are not in excess of reasonable charges consistent with efficiency, economy, and quality of care." This provision prohibits the State from making excessive payments to nursing homes; it does not require the State to make certain minimum payments. The federal regulations duly promulgated by HEW specify that the "upper limit" for Medicaid payments to nursing homes and intermediate care facilities is restricted to "customary charges which are reasonable." 45 C.F.R. § 250.30(b)(B). Furthermore, the federal regulations specifically provide that a state may pay less than the upper limits. 45 C.F.R. § 250.30(b). Nowhere do the federal regulations mandate that a state must make specific minimum payments. Reimbursement to nursing homes is determined by the state-set reimbursement levels which may include part or all of the costs of nursing home care. *See* 42 U.S.C. § 1396d(a); Ga.Code Ann. § 99–2902.

■ The "free choice of provider" requirement, 42 U.S.C. § 1396a(a)(23), relied upon by Briarcliff, also does not regulate the fee structure established under the Georgia Medicaid Plan. The "free choice of provider" requirement is designed to assure each Medicaid recipient a free choice among qualified providers of medical assistance and to guarantee that the state will not dictate to any Medicaid recipient where he or she must receive treatment. "This provision does not obligate the State to pay the charges of the provider without reference to its schedule of charges or its standard of care." 1967 U.S.Code Cong. & Admin. News 3021. The fact that the State's fee structure is not intended to be affected by the "free choice of provider" requirement is further supported by the federal regulations. 45 C.F.R. § 249.20 provides:

"A State plan for medical assistance under title XIX of the Social Security Act must provide that any individual eligible for medical assistance under the plan may obtain the services available under the plan from any institution . . . which is qualified to perform such services. . . . This *provision does not prohibit the State agency from establishing the fee which will be paid to providers for furnishing medical and remedial care available under the plan or from setting reasonable standards relating to the qualifications of providers of such care. . . .*" (Emphasis added)

Thus, the "free choice of provider" requirement, 42 U.S.C. § 1396a(a)(23), has not been violated by DHR's setting of a $550 per month reimbursement ceiling.

Briarcliff's reliance on 42 U.S.C. § 1396a(a)(2) is also misplaced. That provision has no relevance to the present case as the Georgia General Assembly has provided that the costs of all assistance programs, including Medicaid, be met by State and Federal funds only; no local funds are used. Ga.Laws 1970, p. 451; Ga.Code Ann. § 99–2916.

■ Providers of services are not required to participate in a state's Med-

icaid program, but if they do choose to participate, they must agree to accept payment in accordance with the state plan provisions. According to 45 C.F.R. § 250.30(a)(6), the state plan must provide for limiting participation in the program to providers of service who accept, as payment in full, the amounts paid in accordance with the state's established fee structure. If a qualified provider believes that it is able to collect higher fees by not participating in the Medicaid program, it need not choose to participate. The Medicaid program is not designed to protect providers from the consequences of their business decisions or from business risks. The Medicaid Act and implementing regulations grant the states a wide discretion in determining fee structures. The only right to which Briarcliff is entitled is the right to a method of reimbursement which provides for payments which are *not in excess* of reasonable charges consistent with efficiency, economy, and quality of care, 42 U.S.C. § 1396(a)(30). The Georgia Department of Human Resources has violated none of the statutory provisions of the Federal Medicaid Act in implementing maximum reimbursement ceilings as alleged by Briarcliff.

■ (2) *Provider Agreements and Manual*—The Manual provides at § 104.2 that a state may immediately terminate nursing homes from Medicaid participation in cases of willful or grossly negligent noncompliance with the Manual's policies and procedures. However, § 104.7 of the Manual goes on to provide that any condition of termination, apparently including those referred to in § 104.2, is subject to appeal pursuant to Chapter V of the Manual. Chapter V, § 502 of the Manual provides for prior notice and opportunity for a pretermination hearing in the event that the State intends to terminate a particular provider. Therefore, it appears that Briar-

cliff's allegation that DHR may terminate a provider's participation in the Medicaid program at any time without prior notice or an opportunity for a pretermination hearing is erroneous.

■ Paragraph 6 of the Provider Agreement provides that DHR may decrease the level of reimbursement to providers otherwise authorized in the Provider Agreement. As discussed in the first part of this Order, the State need not reimburse providers to the full extent of their actual costs but may set reimbursement levels at any amount they choose, within certain maximum limits. Paragraph 6 of the Provider Agreement, therefore, does not violate any of the provisions of Title XIX of the Social Security Act or its implementing regulations.

■ Paragraph 9 of the Provider Agreement simply states the obvious— when obligations of the State reach the balance of funds appropriated by the Georgia General Assembly for Medicaid benefits the Georgia Medicaid Program terminates. The Georgia Constitution and statutory provisions in general prohibit deficit financing, restrict expenditures by State agencies to those sums specified and for those particular purposes specified by appropriation acts, and impose budgetary controls on the disbursement and expenditure of those funds which have been appropriated. *See* Ga.Code Ann. §§ 2–1911, 2–6201, 2–6202, 40–402, 40–413–416, 40–418, 419. Paragraph 9 is an attempt to make providers of Medicaid services aware of the constitutional and statutory debt prohibitions which might affect the Georgia Medicaid program at some future time. The content of Paragraph 9, automatic termination when obligations equal appropriations, is dictated by the Georgia Constitution and does not offend federal law.[1]

1. It is important to note that Paragraph 9 applies prospectively from the date that the Agreement is entered into by the parties, and should not be construed as permitting the State to impair existing contractual obligations.

Furthermore, Briarcliff is not required to participate in the Georgia Medicaid program, such a decision is completely voluntary on the part of the provider. If Briarcliff does elect to participate in the program it may terminate participation at any time and for any reason. The subject Provider Agreement is an arms length business contract entered into voluntarily by the provider and this Court cannot be used to alter the terms of such a contract, particularly when such terms are not in violation of any federal law. Briarcliff is asking the Court to immunize it from the risks and consequences of its business decisions, and this the Court cannot do.

The defendant DHR further contends that this suit is barred by the Eleventh Amendment of the United States Constitution. However, as the resolution of the statutory claims are dispositive of the issues in this case, the Court declines to address this constitutional issue. For a discussion of some of the problems posed by the Eleventh Amendment see *Mass. General Hosp. v. Sargent,* 397 F. Supp. 1056 (D.Mass.1975).

In summary, the Court finds as follows: The nursing home reimbursement provisions challenged by Briarcliff are within the upper limits established by 42 U.S.C. § 1396a(a)(30) and further delineated by the implementing federal regulations. The states are free to establish their own fee structures within those limits. The maximum reimbursement provisions set by DHR do not violate the "free choice of provider" requirement or otherwise conflict with federal statutory and regulatory requirements. Furthermore, the provisions of the Provider Agreement and Manual challenged by Briarcliff are not violative of any federal law. Section 502 of the Manual provides for prior notice and a pretermination hearing in the event that an individual provider is terminated. Prospective decreases in the reimbursement levels do not offend Title XIX inasmuch as Title XIX does not specify minimum reimbursement rates. More-over, Paragraph 9 of the Provider Agreement does not offend Title XIX, but rather merely identifies that point in time at which the State of Georgia cannot, under the Georgia Constitution and various statutory provisions, continue to operate the Medicaid Program. The Provider Agreement represents an arms length business contract which this Court does not have the power to alter.

Since the Georgia State Plan provisions at issue in this case satisfy all statutory requirements, the motion of defendant Georgia Department of Human Resources to dismiss the original complaint is hereby ordered granted. As stated earlier in this Order, in accordance with Local Rule 91.2, defendant Matthews's motion to dismiss the original complaint is also hereby ordered granted. Moreover, inasmuch as the provisions of the Georgia Provider Agreement and Nursing Home Services Manual at issue in this case are not in violation of any federal statutory requirements, the motions of defendant Georgia Department of Human Resources and defendant Matthews to dismiss the amended complaint is hereby ordered granted.