THE INDIANA DEPARTMENT OF PUBLIC WELFARE AND WAYNE
A. STANTON, ADMINISTRATOR *v.* MERCURY L. ANDERSON.

[No. 2-675A154. Filed December 2, 1976.]

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellants.

*Richard D. Boyle, Cynthia A. Metzler,* Legal Services Organization, of Indianapolis, for appellee.

SULLIVAN, J.—Appellant Indiana Department of Public Welfare (Department) appeals the judgment of the Marion Superior Court which ordered that disability payments be made to Appellee Mercury L. Anderson (Anderson).[1]

In 1970, Anderson, a domestic worker for the prior 15 years fell and broke her ankle. Although the ankle was set, it did not heal properly. After a year of out-patient treatment, Anderson stopped going to the hospital, apparently because of an unpleasant experience there. In November 1972, Anderson went to the Employment Security Division seeking a job. Counselors there felt she was unemployable because of her physical condition, and urged her to seek disability benefits from the County Department of Public Welfare. She was reluctant to do so, desiring to take care of herself, but was eventually persuaded to apply. Because of her inability to read and write, the counselor at Employment Security helped her complete the welfare benefit application. On April 13, 1973, a medical examination was performed by Dr. John E. Szewczyk at the request of the Marion County Department of Public Welfare. Dr. Szewczyk reported that Anderson had very weak and atrophied quadriceps muscles in her left leg as a result of the 1970 fractures. He noted that the condition was severe and slowly progressive, and recommended quadriceps exercises. He characterized the condition as "temporary" and checked the box marked "yes" in response to the question whether the disability could be "substantially reduced by treatment." Yet in the same report, he verified that Anderson "does have a physical or mental impairment, disease, or loss which appears reasonably certain to continue throughout the lifetime of the individual without significant improvement and which substantially impairs his [sic] ability to perform labor or services or to engage in a useful occupation."[2]

1. The statute under which Anderson sought benefits, IC 12-1-7-29—12-1-7-48 was repealed effective January 1, 1974.

2. Dr. Szewczyk's evaluation of Anderson's condition was reported on the State Department's pre-printed Form 251A. The last item on

A Social Report was completed on April 18, 1973, which noted, among other things, that Anderson had only a third grade education, but was "now taking Basic Education and can now read and write some." Anderson's fear of the hospital was also reported, but the social worker convinced her to return to the hospital for further treatment.

Anderson's application for benefits was denied by the County on May 22, 1973, the only reason given being "[n]ot totally and permanently disabled." She pursued an appeal and was given a "fair hearing"[3] before a hearing officer on July 27, 1973. In addition to testifying herself, Anderson offered affidavits executed by Maureen K. Sullivan, the counselor she had seen initially at the Employment Security Division and from Dr. Szewczyk. In his affidavit, Dr. Szewczyk stated that he found Anderson to have a disability which was likely to continue throughout her lifetime, and that his contradictory statement that the condition was "temporary" was due to his misunderstanding of the meaning of the terms "permanent" and "temporary." He further stated that had he understood the terms as defined in the Handbook of Public Assistance he would have checked "permanent" on the report. He says that, "Mrs. Anderson has a severe, slowly progressive major disability which *may* respond favorably to treatment—there is no way to assess this possibility with any certainty." (original emphasis) Finally, he stated that he wished to change his designation of "temporary" to "permanent." Sullivan described her counseling sessions with Anderson and expressed the opinion that Anderson's physical condition prevented her from working.

The "hearing officer" compiled the medical and social data offered at the "fair hearing" and sent it to the State Medical

that form contains the language above-quoted which incorporated the statutory definition of a "disabled person." The examining physician was required to check whether the applicant "does" or "does not" fit these criteria. *See*, IC 12-1-7-29 (a), since repealed.

3. The statute designates this phase of the review procedure as a "fair hearing." IC 12-1-7-41, since repealed.

Review Team. This compilation appears in the record as the "Facts" section of the decision of the State Department. Our review of the record and of the statute does little to enlighten us as to the function and composition of the Medical Review Team. IC 12-1-7-35 provided that the medical and social evaluations "shall be subject to review and determination of eligibility, as to permanent and total disability, by qualified representatives of the state department before assistance shall be granted by the county department. . . ." Apparently "qualified representatives" refers to the Medical Review Team, since the hearing officer in his affidavit referred to the hearing as "an appeal from the decision of State Medical Review Team. . . ." He also stated that his role was merely to collect information which would be submitted to the State Medical Review Team for their Medical re-evaluation. This "re-evaluation" was then adopted by the State Department in its findings and decision of August 20, 1973 as follows:

"FINDINGS
The State Medical Review Team reviewed the additional medical information presented at the hearing and reached the following decision: '. . . the Medical Review Team still feels the applicant is not permanently and totally disabled. Her medical condition in all probability can be substantially reduced by treatment if she would only submit herself to treatment. The original (DPW Form 251B) [the social report] states, 'she can now read and write and therefore could be vocationally trained as her disability even without treatment is not *total*.'

DECISION
The State Department sustains the action of the Marion County Department of Public Welfare in their decision of Disabled Assistance effective June 1, 1973, Not Permanently and Totally Disabled."[4]

Anderson began seeing a physical therapist on June 1, 1973,

---

4. The "fair hearing" and administrative appeal procedures utilized here leave a great deal to be desired. They are also directly contrary to the Department's own regulation that "the person who conducted the hearing shall report his findings of fact *and decision upon the hearing*." Burns Ind. Admin. Rules & Regs. § (52-1211)-1(f) (1975 Supp.). Anderson, however, has specifically declined to make any assertions of procedural error.

after the initial county denial of her application, but before the "fair hearing." (The hearing officer noted in his statement of facts that Anderson was receiving treatment at the Orthopedic Clinic.) She had 13 treatments over a 4-month period, but there was no resulting improvement in her condition. The futility of the treatments led to their discontinuation at the attending physician's request on October 1, 1973. An affidavit from the physical therapist describing the course of treatments and Anderson's efforts to perform the exercises was submitted to the Department on October 11, 1973. In an addendum to its August 20th decision, the Department stated that after reviewing the affidavit and the complete record, the Medical Review Team still found that Anderson's condition "was not totally disabling and in all probability can be substantially reduced," and the Department reaffirmed its decision denying benefits. This decision was sustained by the State Board of Public Welfare on November 21, 1973.

Anderson filed a complaint for judicial review with the Marion County Superior Court on January 24, 1974, alleging that the Department's decision was arbitrary and capricious and unsupported by substantial evidence of probative value.[5] On Anderson's Motion for Summary Judgment, the court entered the following Judgment and Order:

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED by the Court:

1. That the decision of the Indiana Department of Public Welfare denying Aid to the Disabled (APTD) to Mercury L. Anderson is set aside and vacated.

2. That Mercury L. Anderson is declared to be entitled to Aid to the Disabled (APTD) benefits retroactive to thirty (30) days from the date of her application i.e. April 27, 1973 through and including December 31, 1973.

3. That the Indiana Department of Public Welfare and Wayne A. Stanton in his official capacity as Director,

5. At that stage, Anderson sought review of a negative decision. Therefore, the sufficiency of evidence allegation presented no question for review. The Marion Superior Court was confined to a determination whether denial of benefits was arbitrary and capricious See, Part I, *infra*.

are ordered and mandated to make, or cause to be made, payment to Mercury L. Anderson, through her counsel of record, of Aid to the Disabled (APTD) benefits retroactive to thirty (30) days from the date of application *i.e.* April 27, 1973 through and including December 31, 1973 which assistance amounts to six hundred and Fifty Dollars and sixty-eight cents ($650.68).

4. That the plaintiff recover of and from the defendants, the sum of $650.68, together with the costs of this action."

It is from this Judgment that the Department appeals.

The Department argues that the court erred in ordering that disability payments be made by the State Department to Anderson: (1) because there was sufficient evidence to sustain the determination that Anderson was not disabled; (2) because the relief granted exceeded the court's power; and (3) because the State Department as opposed to the County agency, is not authorized to make disability payments.

## I.

## THE DECISION OF THE DEPARTMENT WAS CONTRARY TO LAW

The administrative determination which was under review in this case is not an "administrative adjudication" within the meaning of the Administrative Adjudication Act[6] since the definitional section of that Act specifically excludes ". . . determination of eligibility and need for public assistance under the welfare laws. . . ." Ind. Ann. Stat. 4-22-1-2 (Burns Code Ed. 1974). This does not, however, preclude judicial review of the decision. It is well-established that orders of administrative bodies are subject to judicial review to determine whether the agency has acted within the scope of its powers, whether the record supports the factual conclusions, and whether the determination comports with applicable law. *City of Indianapolis* v. *Nickel* (1975), 165 Ind. App. 250, 331 N.E.2d 760, 767;

---

6. Ind. Ann. Stat. 4-22-1-1 *et seq.* (Burns Code Ed. 1974).

*Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399. Although the provisions of the Administrative Adjudication Act are not directly applicable, the standard of review set out in that Act provides a clear and workable standard which we have applied in the past. *Uhlir* v. *Ritz* (1970), 255 Ind. 342, 264 N.E.2d 312; *Ind. Dept. of Public Welfare* v. *DeVoux* (1974), 161 Ind. App. 40, 314 N.E.2d 79, 85-6.

Thus we are guided here by the following standard as applied to the review conducted below:

"On such judicial review, if the agency has complied with the procedural requirements of this act, and its finding, decision or determination is supported by substantial, reliable and probative evidence, such agency's finding, decision or determination shall not be set aside or disturbed.

If such court finds such finding, decision or determination of such agency is:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence, the court may order the decision or determination of the agency set aside. The court may remand the case to the agency for further proceedings and may compel agency action unlawfully withheld or unreasonably delayed." Ind. Ann. Stat. 4-22-1-18 (Burns Code Ed. 1974).

Our sole concern here is whether the court abused its review authority in determining, contrary to the decision of the Department, that Anderson is permanently and totally disabled.

In seeking disability benefits, the burden was upon Anderson to prove that she was disabled. The Department's decision finding her not disabled was, therefore, a negative decision, and could only be attacked as contrary to law. The reviewing court could not re-weigh the

evidence, but could consider only the evidence most favorable to the decision along with all reasonable inferences flowing therefrom. Reversal of the Department's decision was proper only if the evidence considered in this light led to but one reasonable conclusion and the Department had reached the contrary conclusion. *Gariup* v. *Stern* (1970), 254 Ind. 563, 568, 261 N.E.2d 578, 582-3; *Houser* v. *Bd. of Com'rs. of Cnty. of DeKalb* (1969), 252 Ind. 312, 316, 247 N.E.2d 675, 678; *Atkins* v. *Klute* (1976), 169 Ind. App. 206, 346 N.E.2d 759, 762. Upon appeal we must apply the same standard to the administrative decision.

The Indiana statute granting disability benefits which was in effect when Anderson made application defined an entitled "disabled person" as one who:

"Has a physical or mental impairment, disease, or loss which is verifiable by a physician possessing an unlimited license to practice medicine in this state, and which appears reasonably certain to continue throughout the lifetime of the individual without significant improvement, and which substantially impairs his ability to perform labor or services or to engage in a useful occupation. Employment in a sheltered workshop or under an approved vocational rehabilitation plan shall not be considered a 'useful occupation' for the purposes of this act." IC 12-1-7-29 (a)[7]

The Department has elaborated on this definition[8] in its own Public Assistance Manual §§ III-E-1 and III-E-2 as follows:

"I. Definition of Disability:

In order to receive assistance as a disabled person, such person shall be determined to be disabled according to the definition in § 82a of The Welfare Act which defines a disabled person as one who has a physical or mental impairment, disease, or loss which appears reasonably certain to continue throughout the lifetime of the individual without significant improvement, and which substantially im-

---

7. The present provision is designated as Ind. Ann. Stat. 12-1-7.1-1 (Burns Code Ed. 1973).

8. The definitional distinctions made between "impairment" and "disability" in the Workmen's Compensation Act, Ind. Ann. Stat. 22-1-1-1 *et seq.*, are not present in the disability statute under which Anderson sought benefits.

pairs his ability to perform labor or services or to engage in a useful occupation.

In determining whether a person is disabled, consideration shall be given to the existence of *permanent impairment* or a combination of a such impairments, which together with such factors as age, training, skills and work experience, result in *total disability*.

A. *The term permanent* means a physical or mental impairment of major importance or a combination of such impairments which medical determination indicates is likely to continue throughout the lifetime of the individual and is not likely to respond to any known therapeutic procedures. *Permanent does not rule out the possibility of rehabilitation, or even recovery from the disability.* The term is not used in the sense of being *unchangeable* but is used as distinct from *temporary.* ·

The finding of the permanence of the impairment shall be based on substantiating medical evidence and so documented that the State Supervising Physician will have sufficient information upon which to base a decision with reference to the permanence of the impairment without examining the patient.

B. *The term total* means the physical or mental impairment is *such that the person is substantially impaired in his ability to perform labor or services or to engage in a useful occupation.*

In this connection 'substantially impaired' relates to the extent which the individual's permanent impairment has left him able to engage in those activities necessary to carry on specified responsibilities, such as those related to employment or homemaking.

The length of time the total disability continues is not a factor because changes in the social situation may occur at any time.

C. If an individual is able to perform the essential activities of a useful occupation within his competence, such as holding a job or homemaking, with sufficient regularity to receive regular payments for his own efforts *[or] to carry homemaking responsibilities on a continuing basis for at least one person in addition to himself,* such person is not considered to be substantially impaired in his ability to engage in a useful occupation. 'Within his competence' refers to the person's physical condition, mental capacity, emotional stress, education and work skills.

*If there is question as to whether or not there is employment available to the applicant that is within his competence, clearance shall be made with the nearest Employment Security Division Office.*

1. *Useful occupation* is defined as activity that demands the time and attention of the person for the ultimate benefit of others. *The following are not considered as useful occupations:* Hobbies; *activity which is essentially occupational therapy;* work made possible only by sympathy of others in assisting in the work or purchasing the product; work not normally considered a necessary occupation, and if the individual cease doing it no one else would replace him; *work in a sheltered workshop; and work under an approved vocational rehabilitation plan.* Income from any such activity shall be considered in the determination of need." (Emphasis supplied)

The Department in its original decision found that Anderson was not permanently and totally disabled because "[h]er medical condition in all probability can be substantially reduced by treatment if she would only submit herself to treatment." When Anderson subsequently presented evidence of her unsuccessful physical therapy, the Department without elaboration continued to stand by its original decision that her condition "was not totally disabling and in all probability can be substantially reduced." While it is true that Dr. Szewczyk in his original report indicated on the form that he considered Anderson's condition to be temporary, his later affidavit reveals that he did so only because he misunderstood the terms "temporary" and "permanent." Upon reading the Department's own definition, *supra,* he changed his characterization of her disability. Moreover, as hereinbefore noted, Dr. Szewczyk, on the original reporting form, verified that Anderson:

"{ does / does not  ☒ / ☐ } have a physical or mental impairment, disease or loss which appears reasonably certain to continue throughout the lifetime of the individual without significant improvement and which substantially impairs his ability to perform labor or services or to engage in a useful occupation."

Despite this medical evidence, the Board initially found her condition could be improved "if she would only submit herself to treatment." The factual data transmitted to the Department by the hearing officer specifically stated that Anderson was continuing to receive treatment at the orthopedic clinic. The physical therapist's affidavit described the futility of that treatment. The only suggestion that Anderson may have refused treatment is her own statement that much earlier she had stopped going to the hospital because students there had told her they were going to re-break her ankle and set it again without an anesthetic. There is no medical report recommending that her ankle be rebroken. Thus the evidence is such as to lead to only one reasonable conclusion—that Anderson has a disability which prevents her from working despite her desire to support herself.

The alternative ground given by the Department for denying relief is that Anderson "can now read and write and therefore could be vocationally trained. . . ." This statement is an exaggeration of the social worker's statement that Anderson is taking Basic Education and "can now read and write some." Even if Anderson's reading and writing skills were sufficient to allow vocational training the definition of disability specifically excludes employment in a vocational rehabilitation plan as a "useful occupation." IC 12-1-7-29, *supra;* Public Assistance Manual § III-E-1(c) (1), *supra.*

When Anderson applied for benefits she was 50 years old, had a third grade education, and had been a domestic worker for 15 years. The Department's manual directs that in addition to physical impairment a person's "age, training, skills and work experience" should be considered in determining whether she is disabled. Public Assistance Manual § III-E-1, *supra.* If there is any question whether employment is available within the applicant's competence, the nearest Employment Security Division office is to be checked. Public Assistance Manual § III-E-1(c), *supra.* Here, counselors at

the Employment Security Division persuaded Anderson to apply for disability benefits because they considered her incapable of working.

The only reasonable inference to be drawn from this evidence is that Anderson is disabled within the meaning of the statute. There is no question with respect to credibility of witnesses here since the only person to personally observe Anderson and heard her testify was the hearing officer, who took no part in the decision. The only stated reasons for the denial of benefits have no foundation in the evidence which was preserved of record.

To the extent that the court below determined Anderson to be disabled, the judgment below is affirmed.

## II.

### THE CAUSE MUST BE REMANDED TO THE DEPARTMENT FOR A DETERMINATION OF THE AMOUNT OF DISABILITY BENEFITS ANDERSON SHOULD RECEIVE

The Department argues that the review court exceeded its authority in awarding affirmative relief in the form of a payment of $650.68 benefits for the period from April 27, 1973 through December 31, 1973. It relies upon *Indiana Dept. of Public Welfare* v. *DeVoux* (1974), 161 Ind. App. 40, 314 N.E.2d 79, in urging that the only remedy available to the court was to remand Anderson's cause for a new hearing.

Anderson correctly points out, however, that *DeVoux* involved a different problem. In *DeVoux,* the Department based its denial of benefits upon evidence which DeVoux had no opportunity to rebut. Since DeVoux had been denied procedural due process, a new hearing was ordered. Here, however, Anderson makes no claim that she was denied procedural due process. Her only cognizable claim is that the Department's decision is arbitrary and capricious and thus contrary

to law. We have held, *supra,* that the evidence already before the Department establishes as a matter of law that Anderson is entitled to benefits. To remand her case for re-determination of her eligibility would needlessly prolong this matter.

That is not to say, however, that the court correctly ordered the payment of a specific sum. The amount of disability assistance, and the date on which payments were to begin are matters which by statute were then made discretionary with the county and state welfare departments. IC 12-1-7-31, 12-1-7-36, 12-1-7-41 (Burns Code Ed. 1973). In light of these provisions, the judgment must be reversed insofar as the court ordered a specific sum to be paid, and the cause remanded to the Department for a determination of the amount owed to Anderson.

## III.

## THIS ACTION WAS PROPERLY BROUGHT AGAINST THE STATE DEPARTMENT OF PUBLIC WELFARE

The State Department argues that since IC 12-1-7-36 directed that disability payments be made by the county department, the State Department is not the proper defendant. This argument ignores the explicit words of the statute which prescribes an appeal through the State Department:

"The state department may make such additional investigations as it may deem necessary and shall make such decisions relative to the granting of assistance and the amount of assistance to be granted to the applicant as in its opinion is justified and in conformity with the provisions of this act [12-1-1-1—12-1-12-17]. *All decisions of the state department made in conformity with the terms of this act shall be binding upon the county department involved and shall be complied with by such county department, and shall have the same force and effect as decisions of the county department from which appeals are not taken.* IC 12-1-7-41 (Burns Code Ed. 1973). (Emphasis supplied).

Since it is within the authority of the State Department to compel the county department to make payments, it was

proper to name the State rather than the county department as the defendant in the judicial review action. Moreover, Anderson is appealing the State Department's own independent determination that she is not disabled. Having exhausted her administrative remedies, she was seeking review of the "final order" of the Department. *Downing* v. *Bd. of Zoning Appeals of Whitley Co.* (1971), 149 Ind. App. 687, 274 N.E.2d 542. We find no error in Anderson's designation of defendants.

Finally, the Department argues that it was denied procedural due process because the court below failed to rule on its motion to correct errors. Initially, the court denied the Department's motion upon grounds that it was improperly captioned and not timely filed. When presented with assertions in the Department's Motion to Reconsider Denial of Defendants' Motion to Correct Errors that the error in the caption was a minor typographical error and that the motion was timely filed, the court made the following entry:

> "The Court being apprised of the fact that Defendants Motion to Correct Errors was timely filed, Defendant Motion to Reconsider Denial of Defendants Motion to Correct Errors denied."

The entry is ambiguous. It could be a denial of the motion because of an improper caption, or it could be a denial on the merits. At this juncture, however, it would be useless formalism to do as the Department suggests and remand this case for a more clear ruling on the motion. Furthermore, it would unnecessarily delay Anderson's long overdue benefits. The rulings of the court below are sufficiently clear to allow intelligent review. The court ruled against the Department on the alleged errors presented in the motion to correct errors in its denial of the Department's Motion for Summary Judgment and in finding against the Department's affirmative defense to the complaint.

The judgment below is affirmed insofar as it determined Anderson's entitlement to benefits and is reversed insofar

as it fixed the amount of those benefits. The cause is remanded to the Marion Superior Court with directions to modify the judgment accordingly and to remand the cause to the Department for determination of the amount due Anderson.

White, J., concurs; Garrard J., (participating by designation), concurs.

NOTE.—Reported at 357 N.E.2d 267.