INDIANA DEPARTMENT OF PUBLIC WELFARE, Appellant (Defendant Below),

v.

CRESCENT MANOR, INC., Appellee (Plaintiff Below).

No. 2–1179 A 333.

Court of Appeals of Indiana, Fourth District.

Feb. 16, 1981.

Rehearing Denied May 22, 1981.

Theodore L. Sendak, Atty. Gen. of Ind., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellant.

Paul G. Roland, Ruckelshaus, Roland & O'Connor, Indianapolis, for appellee.

YOUNG, Presiding Judge.

The Indiana Department of Public Welfare appeals the trial court judgment holding invalid the Department's action limiting the Medicaid reimbursement rate paid to Crescent Manor Nursing Home for services rendered to publicly assisted patients. Crescent Manor successfully argued in the trial court that the Department's disallowance of part of Crescent Manor's lease costs in setting its reimbursement rate was unsupported by substantial evidence, arbitrary and capricious, in excess of statutory authority, and contrary to law. From the trial court's judgment ordering the Department to include in Crescent Manor's reimbursement rate its full lease costs, the Department appeals.[1] We reverse, holding

---

1. The somewhat complicated procedural history of this case has given rise to several issues. There were actually two orders issued by the trial court. The trial court issued its first decision, which set aside the Department's determination and remanded the case to the Department ordering it to make findings and a decision, on September 29, 1978. The trial court, in its findings and conclusions, determined that the Department's decision was arbitrary and capricious, unsupported by substantial evidence, contrary to law, and in excess of statutory authority. Although a Motion to Correct Errors was filed by the Department and overruled by the trial court, no appeal of this order was taken.

The Department upon remand, conducted a rehearing and issued more detailed findings of fact and conclusions of law renewing its earlier determination. Crescent Manor then appealed this second decision to the trial court which had retained jurisdiction in the remanded cause. The trial court consolidated the two cases and found anew that the Department's decision was unsupported by substantial evidence, contrary to law, in excess of statutory authority, etc. It set aside the Department's decision and remanded the case again on May 21, 1979 to the Department with an order to compute Crescent Manor's reimbursement rate using its full lease costs. From this decision, the Department appeals.

Crescent Manor argues, and the trial court found, that the Department acted arbitrarily and capriciously, in excess of statutory authority and without observance of law in holding a rehearing on the appropriate reimbursement rate upon remand. We do not agree. The first trial court order set aside the agency determination because it concluded the determination was unsupported by substantial evidence, arbitrary and capricious etc. Where a court sets aside agency action under a statute like the Administrative Adjudication Act, Ind.Code 4–22–1–18, which authorizes a judgment affirming or setting aside the agency action, the administrative agency is not precluded from reopening the case and hearing it de novo. 2

that the trial court exceeded the limits of judicial review when it reversed the administrative decision of the Department of Public Welfare.

Crescent Manor, Inc. operates an intermediate care 40 bed nursing home in Hancock County, Indiana and participates as a provider of intermediate nursing home services under the federal-state Medicaid Program. The Medicaid Program, enacted as Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, provides for federal-state sharing of costs for medical and rehabilitation services afforded to certain qualified individuals "whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. This program of medical assistance is administered by the states through various plans which were subject to approval by the Secretary of Health, Education and Welfare. Within the boundaries established by the federal Act and its implementing regulations, the state determines the eligibility requirements for medical assistance, the criteria which "providers of services" must meet before the state will enter into a "provider agreement," a condition precedent to provider participation in the program, and the amount of reimbursement that will be made to participating providers for furnishing services to the state's Medicaid recipients.

Crescent Manor, in late 1975, filed a rate request of $17.50 per patient per day with the Department's fiscal agent, Indiana Blue Cross-Blue Shield (IBC–BS), to be effective, if approved, January 1, 1976. As fiscal agent, IBC–BS reviews rate requests by providers participating in the Medicaid program for the Department. Included within the $17.50 per diem figure was Crescent Manor's lease costs broken down to the per diem cost of $3.31 per patient. The Department in the earlier approved rate of $15.75 per diem, had allowed $2.00 per patient per day on the same lease cost figure of $3.31. IBC–BS, using a study of the weighted average of intermediate care nursing homes' ownership costs, concluded that the lease cost was imprudent and unreasonable and denied Crescent Manor's rate request. Instead of the requested rate, IBC–BS granted Crescent Manor a per diem rate of $15.90, allowing only $1.75 towards its lease costs. After the IBC–BS decision was affirmed by the Department, Crescent Manor appealed to the trial court. The trial court reversed the Department, finding that its decision was unsupported by substantial evidence, arbitrary and capricious, and in excess of statutory authority. It remanded to the Department with an order to pay Crescent Manor its full lease costs.

■ Although the administrative determination under review in this case is not an "administrative adjudication" within the meaning of the Administrative Adjudication Act, the standard of review set out in the Administrative Adjudication Act serves to guide judicial review of the Department's decision. *Indiana Department of Public Welfare v. Anderson,* (1976) 171 Ind. App. 375, 357 N.E.2d 267. The Administrative Adjudication Act establishes the following standard for judicial review of administrative determinations:

On such judicial review, if the agency has complied with the procedural requirements of this act, and its finding, decision or determination is supported by substantial, reliable and probative evidence, such

---

Am.Jur.2d, *Administrative Law* § 761 (1962). The administrative body is authorized to rehear and try the matter as it sees fit so long as it does not proceed in a manner inconsistent with the view expressed in the reversing decision. *Bass Foundry and Machine Co. v. Christopoulos,* (1949) 119 Ind.App. 568, 88 N.E.2d 692. Crescent Manor also argues that the failure of the Department to appeal from the first trial court order precludes the Department from asserting error in such order in this appeal. While this reasoning would normally be persuasive, it is not so here. The trial court kept continuing jurisdiction of the cause and, in its findings and conclusions of May 21, 1979 reinstated the September 29, 1978 findings. The September findings were thus made a part of the May decision from which a timely appeal was taken. *But see Indiana Department of Public Welfare v. Rynard,* (1980) Ind.App., 403 N.E.2d 1110. In any event, the Department independently claims error in the May decision and for purposes of this appeal, we need only review that decision.

agency's finding, decision or determination shall not be set aside or disturbed.

If such court finds such finding, decision or determination of such agency is:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

(2) Contrary to constitutional right, power, privilege or immunity; or

(3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence,

The court may order the decision or determination of the agency set aside. The court may remand the case to the agency for further proceedings and may compel agency action unlawfully withheld or unreasonably delayed.

Ind.Code 4–22–1–18.

The trial court found that the Department's action in disallowing the full lease costs was in excess of statutory authority. We first review, therefore, the operative statutory scheme governing the payment of provider claims. The federal Medicaid Act contained no specific provision governing payment to intermediate care nursing facilities. The only federal statutory provision in 1975 governing payment for provider services rendered by intermediate care nursing facilities such as Crescent Manor generally required the Department "to assure that payments .... [were] not in excess of reasonable charges consistent with efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30). This provision prohibited the Department from making excessive payments to nursing homes, it set the "upper limit" for Medicaid payments to nursing homes; it did not, however, require the Department to pay that upper limit. *Briarcliff Haven, Inc. v. Department of Human Resources,* (N.D.Ga.1975) 403 F.Supp. 1355. Rather, reimbursement to nursing homes was to be determined by state-set levels which could include all or part of the cost of nursing home care. *See* 42 U.S.C. § 1396d(a).

The applicable Indiana statutory provision, Ind.Code 12–1–7–17 provides in part the following:

The fees and charges paid to providers for all medical services rendered or materials supplied shall be the usual and ordinary fees or charges paid in the community for services or materials commensurate with the usual and ordinary standards of service in such counties; however, payment of skilled nursing facility and intermediate care facility services, shall, pursuant to section 1902(a)(13)(E) of the federal Social Security Act (42 U.S.C.A. 1396a(a)(13)(E), 1396a(a)(13)(E)), be in accordance with a prospective prenegotiated payment rate predicated on a reasonable cost related basis, with a growth or profit factor, as determined in accordance with generally accepted accounting principles and methods, and written standards and criteria, as established by the state department of public welfare.

42 U.S.C. § 1396a(a)(13)(E), to which Ind. Code 12–1–7–17 refers, was adopted by Congress in 1972 and required the states effective July 1, 1976 to provide payment to skilled and intermediate nursing care facilities on a "reasonable cost related basis." However, as explained above, at the time the disputed rate was set, the federal Medicaid provisions required only that the state's plan of reimbursement assure that payments were not in excess of reasonable charges consistent with efficiency, economy and quality of care." 42 U.S.C. § 1396a(a)(30). Because we find no conflict between Ind.Code 12–1–7–17 and 42 U.S.C. § 1396a(a)(30), the fact that Ind.Code 12–1–7–17 anticipated 42 U.S.C. § 1396a(a)(13)(E)'s mandate that payment be on a reasonable cost related basis has no adverse legal significance to this case.

At the time Crescent Manor's 1976 reimbursement rate was set, the Department had not promulgated regulations establishing rate setting standards. There was, however, in use a manual, "Medicaid Nursing Home Rate Setting Guidelines and

Procedures," formulated by IBC–BS for the Department which established internal guidelines and procedures for determination of rate increase requests. The manual provided on the one hand that "[m]anagement fees and rental or lease payments to a non-related organization entered into with an arm's length transaction are includable in allowable costs at the cost to the provider." The manual also imposed an overall guideline of reasonableness upon reimbursement of all allowable costs. "Reasonable cost for the purposes of rate-setting .... shall include necessary and proper costs incurred in rendering services to patients. Implicit is the expectation that the provider seek to minimize its cost and that its actual costs do not exceed what a prudent and cost-conscious buyer pays for a given item or service." The Department found that Crescent Manor's lease was a product of arms length negotiations between non-related parties. Thus, under manual guidelines, the lease cost was an allowable cost. The Department also found, however, that the lease cost was unreasonable because it was in excess of what a prudent and cost-conscious lessee would pay for the lease. There is nothing in the Department's action inconsistent with the manual guidelines. Full payment of the lease costs merely because an allowable cost is not automatic, but rather, is dependent upon a finding of reasonableness. The manual guidelines themselves we conclude are a reasonable administrative interpretation of the underlying statutes, both federal and state, and violate neither the Indiana statutory directive that payment be predicated on a reasonable cost related basis nor the federal act requirement that payment not exceed reasonable charges consistent with efficiency, economy and quality of care. The Department's interpretations of the statute and its manual are to be afforded great weight and are not to be disturbed if having a reasonable basis, *Capital Improvement Board of Managers v. Public Service Commission*, (1978) Ind.App., 375 N.E.2d 616. Having found a reasonable basis for the Department's statutory interpretation and analysis, we conclude the trial court erred in finding that the Department, in disallowing full lease costs, exceeded its statutory authority.

We next address the trial court's finding that the Department's decision is unsupported by substantial evidence of probative value. The relevant inquiry, upon judicial review of the factual issues decided by the Department, is whether there is substantial evidence of probative value to support the agency's determination. *State ex rel. Department of Natural Resources v. Lehman*, (1978) Ind.App., 378 N.E.2d 31, 36. The main inquiry is whether on the record the agency could reasonably make the findings it has made. 4 Davis, Administrative Law Treatise § 29.01 (1958). The administrative findings must have a reasonably sound basis of evidentiary support. *Old State Utility Corporation v. Greenbriar Development Corp.*, (1979) Ind.App., 393 N.E.2d 785.

The Department based its determination that Crescent Manor's lease cost was unreasonable upon a study completed in early 1976 by IBC–BS of the ownership costs of 30–50 bed intermediate care nursing homes participating in the Medicaid program. From the data collected, IBC–BS computed a weighted average of ownership costs for 1975 for building depreciation, equipment depreciation and mortgage interest. The figure derived was $1.36 per patient per diem. IBC–BS compared the $1.36 weighted average cost figure for owned facilities with the requested $3.31 lease figure and concluded the lease cost was unreasonably high. To compute the amount IBC–BS actually allowed Crescent Manor for its lease costs, $1.75, it took the weighted average of ownership costs, $1.36, and then, in recognition that the study was based on 1975 data, that the study did not account for potential differences resulting from capital improvements, i.e., sprinkler systems, and that the lease cost to Crescent Manor would include a profit factor for the lessor, extrapolated and adjusted that rate to $1.75. IBC–BS admitted that no significant formula was used to adjust the $1.36 figure to $1.75.

The trial court, in concluding that the study could not support the Department's action, found several deficiencies in the study which made its use as a market comparison guide arbitrary and capricious.[2] Those deficiencies were: (1) the exclusion of dual facilities providing both skilled and intermediate care services; (2) the inclusion of homes outside the Hancock County area; (3) the failure to consider the age, physical condition, or mortgage interest rate differentials in computing the weighted average; and (4) the exclusion of leased facilities from the study.

■ We do not believe that any of these facts invalidate the use of the study as a market comparative tool. Given that Crescent Manor provides only intermediate care, the exclusion of dual facilities whose costs might not be reflective of those incurred by intermediate care-only facilities is certainly reasonable. As to the study's inclusion of homes located throughout the state, we first note that Ind.Code 12–1–7–17 requires that the rate paid to nursing homes be determined in accordance with generally accepted accounting principles and methods and written standards and criteria not, as was earlier required, that the rate be the usual and ordinary fees paid in the provider's community. We also note, however, that the manual used by the Department in setting Crescent Manor's reimbursement rate required that the rate be set on the basis of "the usual and ordinary charges that are reasonable." The manual further provides that, "Reasonableness is determined by an analysis of providers financial

data to determine cost of providing services." The phrase "usual and ordinary charges that are reasonable" is defined by the manual as a rate consistent with comparable services in comparable facilities within a market area. Thus, a primary consideration for rate increases is the rate within the comparable market area. "Market area" is defined as "the immediate, most representative locale containing comparable facilities and services." Generally, the market area is the provider's county or county and adjacent counties.[3] However, the Department, in basing its weighted average on the costs of homes located throughout the state, determined that the most representative market for an effective comparison of the costs of intermediate care homes of a bed size similar to Crescent Manor's was the State of Indiana. Accordingly, we leave to the expertise of the Department the determination of the most comparative market area. We cannot say its decision to include homes outside the Hancock area is unreasonable. The trial court's objection to IBC–BS's failure to consider age, condition or mortgage interest rate differentials in its study does not challenge the *reasonableness* of the study but rather the *perfection* of the study. A reviewing court may not, in such an area of agency expertise, substitute its own opinions for those of the administrative agency. *Capital Improvement Board of Managers v. Public Service Commission*, (1978) Ind.App., 375 N.E.2d 616. Additionally, we note that the weighted average derived from the study was adjust-

---

2. Crescent Manor also objects to the use of the study because the Department did not disclose the names and addresses of the homes from which the study data was derived, thus Crescent Manor argues, depriving it of any "real" cross examination of IBC–BS's findings. Crescent Manor cites in support of this argument, *Indiana Department of Public Welfare v. DeVoux*, (1974) 161 Ind.App. 40, 314 N.E.2d 79, wherein the court reversed the agency decision because it was primarily based upon two reports prepared by agency staff which were not in evidence at the hearing nor made available to DeVoux prior to the agency decision.

The facts here are wholly different. The study was introduced into evidence at the hearing and a copy was provided to Crescent Manor.

Ample opportunity to probe and examine the data during cross examination of Mr. Huber, IBC–BS manager of rate review was afforded Crescent Manor. Additionally, the reason the Department did not divulge the names of the homes was to protect the confidentiality of those homes. We, therefore, do not find persuasive the comparison Crescent Manor attempts to draw between *DeVoux* and this case.

3. The manual says the market area *generally* will be the provider's county and contiguous county. The use of the word generally permits the Department to use a larger market area where, as here, there are articulable and legitimate reasons to do so.

ed to compensate for some of these deficiencies.

The most serious problem with the study was its failure to include any leased facilities within its ambit. We agree that a study of the lease costs of other intermediate care leased facilities of similar bed size would have afforded a more precise comparison with the lease costs under review. However, we do not believe that the absence of such a comparison is fatal to the study's validity. The manager of Provider Rate Review for IBC–BS, who is also a CPA, testified that IBC–BS intended to conduct a comparison study of the lease costs of leased intermediate care nursing homes but discovered in its review that the only leased homes of a similar bed size were the very homes whose lease costs were under review, i.e., like Crescent Manor, they were all owned by the same lessor, International Nursing Homes, Inc. Thus, an effective comparison was impossible. We therefore conclude that use of ownership costs to determine the reasonableness of Crescent Manor's lease costs was reasonable under the circumstances.

■ Finally, we conclude that the computation and use of the weighted average of ownership costs to set Crescent Manor's reimbursement rate was reasonable. Similar procedures for computing provider rates have been validated in other states, *Sigety v. Ingraham*, (1971) 29 N.Y.2d 110, 272 N.E.2d 524, 324 N.Y.S.2d 10. In *Sigety*, the Court of Appeals of New York held that use of a weighted average of patient daily costs of similar facilities and adjustments thereto to compute a particular provider's reimbursement rate was reasonable.[4] The New York court we believe correctly observed that rate fixing orders, being quasi-legislative in nature, are not to be annulled except upon a compelling showing that the calculations from which it derived were unreasonable. *Catholic Medical Center of Brooklyn & Queens, Inc. v. Department of Health*, (1979) 48 N.Y.2d 967, 425 N.Y.S.2d 278, 401 N.E.2d 388. We further observe that the legal issue is not whether the criteria utilized to determine Crescent Manor's reimbursement rate were perfect, but whether they can be said to provide for reimbursement on a reasonable cost related basis as required by Ind.Code 12–1–7–17. We finally observe that built into both the federal and state statutory schemes is the objective of providing incentives to the health care industry for the efficient and economical delivery of quality health care services.[5]

■ The "reasonable cost-related basis" standard does not require the state to reimburse the provider nursing home for the actual costs of care. *Cf. Massachusetts General Hospital v. Weiner*, (1st Cir. 1978) 569 F.2d 1156 (hospital providers). Neither does it necessarily require the state to reimburse the provider for the actual reasonable costs of care. *Minnesota Association of Health Care Facilities, Inc. v. Minnesota Department of Public Welfare*, (8th Cir. 1979) 602 F.2d 150. Cost-related rates may be calculated on a class basis even though the method used results in underpayment to some providers. *Unicare Health Facilities, Inc. v. Miller*, (N.D.Ill.1979) 481 F.Supp. 496. Those providers who believe higher fees can be collected by declining participation in the Medicaid program are free to do so. The Medicaid program is not designed to protect providers from the consequences of improvident or ill-advised business decisions. *Briarcliff Haven, Inc. v. Department of Human Resources*, (N.D.Ga.1975) 403 F.Supp. 1355, 1363.

**4.** The New York statute required that rate schedules be "reasonably related to the costs of providing such services." Public Health Law § 2807, subd. 3.

**5.** Indeed, the federal requirement of 42 U.S.C. § 1396a(a)(13)(E) was apparently the result of Congressional displeasure with the widespread state endorsement of flat rate payment systems which were perceived as failing to bring about quality care and the efficient, economical provision of such service. *American Health Care Association, Inc. v. Califano*, (D.D.C.1977) 443 F.Supp. 612. We too take judicial notice ". . . of the widespread complaints, reported in the public press, of the burgeoning costs of Medicaid resulting from lack of proper cost criteria." *Id.*, at 614.

As the finding of the Department that the lease cost negotiated by Crescent Manor was imprudent and unreasonable was supported by substantial, reliable and probative evidence, it follows that its disallowance of Crescent Manor's full lease costs was not arbitrary, capricious or contrary to law. Similarly, its decision to allow $1.75 for those lease costs was based upon calculations that we do not find unreasonable.

For all of the above reasons, the judgment of the trial court is reversed.

CHIPMAN and MILLER, JJ., concur.