**MASSACHUSETTS GENERAL HOS-PITAL, Plaintiff,**

**St. Elizabeth's Hospital of Boston, Intervening Plaintiff,**

**Massachusetts Hospital Association, Intervening Plaintiff,**

**v.**

**Governor Francis W. SARGENT et al., Defendants.**

**Civ. A. No. 72–2839–M.**

United States District Court, D. Massachusetts.

May 20, 1975.

Memorandum July 3, 1975.

Colette Manoil, Tierney, Tierney, St. Onge & Manoil, Boston, Mass., for plaintiff.

William A. Waldron, Ely, Bartlett, Brown & Proctor, Boston, Mass., John F. Dunn, Jr., Boston, Mass., for intervening plaintiffs.

Mitchell J. Sikora, Asst. Atty. Gen., Boston, Mass., for State defendants.

William A. Brown, Asst. U. S. Atty., Boston, Mass., for Federal defendants.

**JUDGMENT**

FRANK J. MURRAY, District Judge.

Upon consideration of, and in accordance with the memorandum to be filed with the clerk, it is hereby *Ordered, Adjudged* and *Declared*:

(1) That as a participant in a plan for medical assistance to medically indigent persons under the provisions of Title XIX of the United States Social Security Act, 42 U.S.C. § 1396 *et seq.*, the Commonwealth of Massachusetts must provide for prompt payment to providers, under 42 U.S.C. § 1396a(a)(13)(D), of the reasonable cost of inpatient hospital services furnished to eligible persons under the Social Security Act;

(2) That the existing practice and policy of the Commonwealth of Massachusetts of payment to providers of inpatient hospital services furnished to eligible persons under the Social Security Act, insofar as the Commonwealth fails to make full and prompt payment to such providers, are in conflict with the United States Social Security Act, 42 U.S.C. § 1396a(a)(13)(D), and the regulations thereunder, 45 C.F.R. § 250.30(b)(1), and therefore violate Article VI of the United States Constitution;

(3) That the continuing and inexcusable failure of the Commonwealth of Massachusetts to make full and prompt payment to Massachusetts General Hospital, St. Elizabeth's Hospital of Boston, and members of the Massachusetts Hospital Association providing inpatient hospital services to eligible persons under the Social Security Act, 42 U.S.C. § 1396 *et seq.*, violates Article VI of the United States Constitution;

(4) That the court retains jurisdiction of this case to enable it to

consider whatever further steps may be necessary to redress the rights of the parties and to effectuate the judgment of the court.

## MEMORANDUM

FRANK J. MURRAY, District Judge.

This case came on to be heard on the merits. It is an action commenced by plaintiff Massachusetts General Hospital (MGH) for relief from an alleged failure of the Commonwealth of Massachusetts to pay fully and promptly for inpatient hospital care rendered by MGH under the state's Medicaid program. The Secretary of the Department of Health, Education, and Welfare (Secretary) is named as a federal defendant.

Plaintiff MGH's amended and supplemental complaint alleges, in substance, that the pattern of appropriation by the Commonwealth of funds to pay for the state Medicaid program, and the pattern of administration of these appropriations by state defendants for fiscal years 1973, 1974, and 1975, amount to a continuing state policy and practice of underappropriation for Medicaid expenses, which result in delayed and incomplete payments for services rendered by MGH to Medicaid recipients. Specifically, MGH alleges that the state is some $4.7 million in arrears in its payments for prior fiscal year services. Plaintiff MGH alleges that the state policy and practice violate the Social Security Act, Title XIX, 42 U.S.C. § 1396 *et seq.*, and certain constitutional provisions (Equal Protection Clause, Due Process Clause, Impairment of Contracts Clause, and Just Compensation Clause). Plaintiff

MGH seeks declaratory and injunctive relief and diversion of state funds until the $4.7 million in past amounts due is paid. Plaintiff also requests convening of a three-judge court under 28 U.S.C. § 2281.

On April 2, 1975, the court denied the state defendants' motion for summary judgment on the grounds that a genuine issue of fact existed at that time and that defendants were not entitled to summary judgment as a matter of law. On April 21, the court determined that plaintiff MGH's motion for summary judgment was not ripe for decision due to the procedural posture of the case. However, the court at that time made certain findings of fact pursuant to Rule 56(d) of Fed.R.Civ.P. and made an interlocutory determination that state defendants' conduct violated the Social Security Act. On May 7, 1975, a hearing was held on the merits to allow the parties to introduce any additional evidence and to argue the issue of the type of relief appropriate.

At the May 7 hearing, St. Elizabeth's Hospital of Boston (St. Elizabeth's) and the Massachusetts Hospital Association (MHA), in behalf of its member hospitals, moved to intervene as parties plaintiff in the instant case, pursuant to Fed.R.Civ.P. Rule 24.[1] These parties are plaintiffs in two other actions before this court which present claims against the instant defendants substantially identical to those raised by plaintiff MGH in the case at bar.[2] Neither state defendants nor federal defendants objected to the intervention; and, after hearing, the motions to intervene of St. Elizabeth's and of MHA were allowed.

1. A third party, Council of Elders, Inc., also moved to intervene. Its motion was granted in open court simultaneously with the motions of St. Elizabeth's and MHA. However, subsequent review of the complaint and other documents in the Council of Elders' case against the Commonwealth, which is pending in this court (*Council of Elders, Inc. v. Commonwealth of Massachusetts*, Civil No. 72–2912–M), reveals that the Council of Elders' case differs substantially from the case at bar in several respects: The Council

is not a provider of inpatient Medicaid services and its claims do not arise under Title XIX; rather the Council provides housekeeping services falling under Title I. Thus, the court will reserve any action on the Council of Elders' case.

2. *St. Elizabeth's Hospital of Boston v. Sargent et al,* Civil No. 72–2840–M; *Massachusetts Hospital Association v. Sargent et al.,* Civil No. 72–2841–M.

## I. *The Procedural Issues*

At the threshold there are certain preliminary procedural issues which should be referred to and considered before reaching the merits.

### A.

Jurisdiction lies in this court under 28 U.S.C. § 1331(a) (federal question), there being questions raised under the laws and Constitution of the United States and the $10,000 jurisdictional amount being satisfied. Plaintiffs also allege jurisdiction under 28 U.S.C. § 1343(3) (deprivation of constitutional rights). Since jurisdiction lies under section 1331(a), the court need not reach a consideration of the issues presented in determining whether section 1343(3) jurisdiction is properly invoked. *Catholic Medical Center of Brooklyn and Queens, Inc. v. Rockefeller,* 305 F.Supp. 1256 and 1268, 1260 (E.D. N.Y.1969), *vacated,* 397 U.S. 820, 90 S. Ct. 1517, 25 L.Ed.2d 806, *aff'd,* 430 F.2d 1297 (2d Cir.), *appeal dismissed,* 400 U. S. 931, 91 S.Ct. 246, 27 L.Ed.2d 262 (1970); *cf. Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (discussing the threshold issues presented in determining section 1343(3) jurisdiction).

### B.

Plaintiffs have standing to prosecute this action. Although the Social Security Act does not by its text provide remedies to private parties, it is clear that welfare recipients have standing to challenge violations of their rights under the Act. *Rosado v. Wyman,* 397 U.S. 397, 420, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *National Welfare Rights Organization v. Finch,* 139 U.S. App.D.C. 46, 429 F.2d 725 (1970); *Smith v. Vowell,* 379 F.Supp. 139 (W.D. Tex.1974). No significant distinction can be drawn between welfare recipients and welfare providers, such as plaintiffs. MGH and the other plaintiffs can show "injury in fact", an "interest . . . arguably within the zone of interest . . . protected", and that "Congress has [not] in express or implied terms precluded judicial review". *Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *National Welfare Rights Organization v. Finch, supra.* Thus, plaintiffs, as provider hospitals, have standing. *Cf. Catholic Medical Center of Brooklyn and Queens, Inc. v. Rockefeller, supra* 305 F.Supp. at 1263.

### C.

The plaintiffs' claim that state defendants' policy and practice violate the Social Security Act is properly before a single federal district judge. Where a claim is made of conflict between state law and a federal statute, that claim is properly characterized as statutory in nature and hence does not require consideration and decision by a three-judge court convened under 28 U. S.C. § 2281. *Swift and Co. v. Wickham,* 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). The case here presents issues of both statutory and constitutional nature; and, in such a situation, the statutory claim should be disposed of first by a single district judge. A three-judge court need only be convened to deal with the constitutional issues, if the statutory claim is not dispositive. *Hagans v. Lavine, supra* 415 U.S. at 543–45, 94 S.Ct. 1372; *Rosado v. Wyman, supra* 397 U.S. at 402–03, 90 S.Ct. 1207.

### D.

Eleventh Amendment state sovereign immunity is no impediment to this court's jurisdiction to hear plaintiffs' claims for declaratory and prospective injunctive relief against defendant state officers. *Ex parte Young,* 209 U. S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *cf. Edelman v. Jordan,* 415 U.S. 651, 664–65, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). No opinion need be expressed as to the effect of the Eleventh

Amendment on plaintiff MGH's demand for diversion of state funds to satisfy past debts owed plaintiff. See Part IV, *infra*.

## II. *The Facts*

Since prior to 1972, the Commonwealth of Massachusetts has participated in the federal Title XIX Medicaid program of medical assistance to certain categories of the needy. This participation is effected by Mass.Gen.Laws ch. 118E, the state Medicaid law, and by the state Department of Public Welfare's "Plan for Medical Assistance" thereunder. By both ch. 118E and the state plan, the Commonwealth has undertaken the establishment of a Medicaid program in conformity with federal law. The Secretary has made payments during each year to the Commonwealth for purposes of its approved Title XIX plan pursuant to 42 U.S.C. § 1396b(d).

The MGH is a private hospital in Boston. Since prior to 1972, MGH has been a "provider" of services to eligible recipients under the Title XIX Medicaid program. In its role as provider, MGH has given necessary inpatient medical care to a substantial number of eligible Medicaid recipients. St. Elizabeth's and certain members of MHA are similar providers to eligible Medicaid recipients. Applications for Medicaid for these recipients have been made to and approved by responsible officials of the Commonwealth. Defendants have acknowledged that an accounting reveals that since June 30, 1972 $144.99 has been due MGH for services rendered during fiscal year 1972; since June 30, 1973 $178,760.92 has been due for fiscal year 1973 services; and since June 30, 1974 $443,946.38 has been due for fiscal year 1974 services.[3] Defendants admit that none of these sums has been paid. St. Elizabeth's and certain members of MHA are likewise owed sums for prior years' services.

The backlog in unpaid obligations owed MGH is primarily the result of legislative appropriations by which the Medicaid program is funded by the Commonwealth. Prior to fiscal year 1973, the Commonwealth's Medicaid appropriation bills were "open ended" in the sense that current year's appropriations could be used to pay both current and prior years' Medicaid obligations. Beginning with Chapter 514 of Acts of 1972 (the regular Medicaid appropriation for fiscal year 1973), there was no language in the enactment authorizing use of current appropriations for prior years' obligations. This omission, in light of Mass.Gen.Laws ch. 29, § 12,[4] in the opinion of the Commonwealth's Attorney General, is a legislative obstacle to payment of prior years' Medicaid obligations out of current year's appropriations. Thus, since mid-1972 belated payments on account of prior years' Medicaid obligations have been made out of special supplemental appropriation bills, *e. g.*, Chapter 647 of Acts of 1972, Chapter 439 of Acts of 1973, and Chapter 1101 of Acts of 1973. These supplemental, or deficiency, appropriations have been delayed in time and insufficient to pay in full the incurred obligations to MGH and the other providers.

The delay in payment to MGH for prior years' incurred obligations has necessitated borrowing or otherwise putting up money by MGH for the purchase of goods and services utilized in the Medicaid program well before receiving reimbursement from the Commonwealth.

3. In addition, plaintiff asserts that an additional $4.1 million is owed for services rendered in these fiscal years. The court need express no opinion as to the portion of this claimed $4.1 million, if any, which is actually owed to plaintiff MGH. The stipulation of the parties as to amounts owed plaintiff MGH extends at the present time only to the $622,852.29 described above. The latter amount, however, provides sufficient basis for consideration of plaintiff MGH's claim on its merits.

4. Mass.Gen.Law ch. 29, § 12 mandates that, unless specifically designated otherwise, appropriations of the legislature are to be used for current fiscal year operating expenses.

## III.  *The Federal Law*

Title XIX Medicaid is one of the "co-operative federalism" welfare programs administered jointly by state and federal governments.  Title XIX provides, that when a state has in effect a medical assistance plan approved by the Secretary, as long as the state abides by its plan federal funds will be provided to pay for, at the minimum, half the costs of the medical assistance.  42 U.S.C. §§ 1396, 1396b.  If the plan or the state's administration thereof fails to conform with the federal law, ". . . the Secretary shall notify [the] State agency that further payments will not be made to the State . . ., until the Secretary is satisfied that there will no longer be any such failure to comply".  42 U.S.C. § 1396c.  Specific guidelines are given regarding what the state plan must provide for.  42 U.S.C. § 1396a.

■ With respect to payments by the states to providers of Medicaid services, such as MGH, Title XIX requires that ". . . A state plan for medical assistance must . . . provide . . . for payment of the reasonable cost of inpatient hospital services provided under the plan . . . ." 42 U.S.C. § 1396a(a)(13)(D).  The legislative history of Title XIX, while sparse relating to provider payments, does make clear that Congress intended the Medicaid program to pay in full the necessary costs for inpatient care under the program.  H.R.Rep.No.213, 89th Cong., 1st Sess. 69 (1965); S.Rep.No.404, 89th Cong., 1st Sess. 79 (1965), U.S.Code Cong. & Admin.News 1965, p. 1943.

■ The Secretary has promulgated administrative guidelines for implementing Title XIX (45 C.F.R. Parts 246–252) and has indicated that standards and principles used regarding payment for Medicare services are generally applicable regarding Medicaid payments for inpatient services.  45 C.F.R. § 250.-30(b)(1)(i–iii).  These Medicare standards provide, *inter alia:*

. . . [T]he methods of reimbursement should result in current payment so that institutions will not be disadvantaged, as they sometimes are under other arrangements, by having to put up money for the purchase of goods and services well before they receive reimbursement.  [20 C.F.R. § 405.402(b)(1).]

. . . Providers of services will be paid the reasonable cost of services furnished to beneficiaries.  Interim payments approximating the actual costs of the provider will be made on the most expeditious basis administratively feasible *but not less often than monthly.* . . . [20 C.F.R. § 405.-454(a).  Emphasis supplied.]

Thus, the Secretary's implementing guidelines for Medicaid reflect the policy that full and prompt payments must be made to providers of inpatient medical assistance.  The Secretary's regulations have the force of federal law upon the states.  *King v. Smith,* 392 U.S. 309, 317, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *cf.* 42 U.S.C. § 1302.

The provider payment provisions of Title XIX have been judicially construed to require prompt and full payment of the actual necessary costs of inpatient Medicaid care.  In *Connecticut State Department of Public Welfare v. Department of Health, Education, and Welfare,* 448 F.2d 209 (2d Cir. 1971), the Second Circuit upheld the Secretary's decision that a Connecticut state plan which did not provide for ". . . full payment of the actual reasonable cost of inpatient services . . .", ". . . [w]hatever the state's justification . . .", ". . . is contrary to federal law . . . ."  At 213–14.  In *Catholic Medical Center of Brooklyn and Queens, Inc. v. Rockefeller supra,* the district court declared that New York State's statutory freezes on the rate of payment for inpatient services violated federal law ". . . insofar as they forbid full payment to hospitals of the actual reasonable cost of inpatient services rendered to participants in New York State medical assistance plan".  305 F.Supp. 1271.  The court concluded

that federal law required provision by the state for ". . . payments to hospitals of the full actual and current costs of inpatient hospital services furnished to eligible individuals . . . ." *Id.* The Court of Appeals affirmed.

■ It is clear that Title XIX mandates full and prompt payment by states to Medicaid providers for inpatient care.[5] Thus, so long as the Commonwealth of Massachusetts participates in the Title XIX Medicaid program, federal law requires that the Commonwealth promptly pay the full actual reasonable costs of inpatient care rendered by providers such as MGH and the other providers. Any failure to do so, regardless of the reason, is a violation of the Social Security Act. Since mid-1972, the Commonwealth's policy of not permitting current fiscal years' Medicaid appropriations to pay unpaid obligations incurred in prior fiscal years, coupled with the practice of delaying authorization for payments for such prior years' obligations to subsequent deficiency appropriations, has resulted in the Commonwealth's failure to promptly pay the full reasonable costs of inpatient care rendered by MGH and the other providers. This policy and practice violate the Social Security Act.

## IV. *The Remedy*

Plaintiff MGH in its complaint and the amendments and supplements thereto sought a declaratory judgment, injunctive relief, and diversion of state funds to pay obligations owing to it. At the May 7, 1975 hearing, plaintiff MGH waived any claim by way of a money judgment against the Commonwealth.

Plaintiff MGH, speaking for all plaintiffs,[6] did, however, press its demand for injunctive relief against both state and federal defendants. Specifically, plaintiff MGH has prayed that

> This court grant injunction permanently restraining and enjoining each of the defendants and each of their officers, agents, servants and employees or anyone associated with or acting in their behalf or participating with them from applying, interpreting, effectuating, implementing, enforcing, or administering c. 514, c. 439 and c. 647 or any other state law or policy, in such a way as to deny the plaintiff prompt payment of its reasonable costs for recipients eligible for benefits of title XIX, so long as the defendants and the Commonwealth of Massachusetts continue to participate in the federal medicaid program.

MGH's *Motion to Amend Complaint* of August 13, 1973, Exhibit B, page 5. The difficulty with plaintiff MGH's demand is that it is not clear whether it seeks a prospective injunction, which would require that in the future the state defendants pay promptly after incurring Medicaid expenses, or, alterna-

---

5. It appears that the same requirement for full and prompt payment to providers is embodied in the formal statutory structure of the Massachusetts Medicaid law. Mass.Gen. Law ch. 118E, § 14 directs the Department of Public Welfare to ". . . pay for eligible care and services furnished on or after the date of application. . . ." The *Massachusetts State Plan for Medical Assistance*, adopted pursuant to Mass.Gen.Law ch. 118E, § 4, follows closely the provisions of 45 C.F.R. § 250.30(b)(1) regarding reimbursement to providers for the reasonable cost of the services.

The courts of the Commonwealth have implicitly recognized the right of providers of welfare medical services to sue for reimbursement for those services and to obtain payment for said services, in contexts analogous to the Medicaid inpatient situation. *Cf.*

*Massachusetts General Hospital v. Rate Setting Commission*, 359 Mass. 157, 269 N.E.2d 78 (1971). In addition, the Supreme Judicial Court has targentially recognized that *Catholic Medical Center of Brooklyn and Queens, Inc. v. Rockefeller*, 305 F.Supp. 1256 and 1268 (E.D.N.Y.1969), *vacated* 397 U.S. 820, 90 S.Ct. 1517, 25 L.Ed.2d 806, *aff'd*, 430 F.2d 1297 (2d Cir.), *appeal dismissed*, 400 U.S. 931, 91 S.Ct. 246, 27 L.Ed. 2d 262 (1970), which holds that federal law requires current payment for actual costs of inpatient services, states the correct federal standard. *See Murphy Nursing Home v. Rate Setting Commission*, Mass., 305 N.E.2d 837 (1973).

6. At the May 7, 1975 hearing, the intervenors stipulated that plaintiff MGH would speak for them in the action.

tively, whether it seeks an injunction to require that state defendants pay promptly Medicaid bills due now for services rendered in the past. Insofar as the latter injunction would operate to mandate that the Commonwealth disburse funds from its treasury, serious Eleventh Amendment problems may arise. *See Edelman v. Jordan, supra.* However, the court need not resolve the question of exactly what type of injunctive relief plaintiff MGH desires in order to dispose of the case.

■ Questions of the propriety of declaratory relief are to be considered independently of questions of the propriety of injunctive relief. *Zwickler v. Koota,* 389 U.S. 241, 254, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967). The Supreme Court has stated that ". . . different considerations enter into a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other". *Roe v. Wade,* 410 U.S. 113, 166, 93 S.Ct. 705, 733, 35 L.Ed.2d 147 (1973). Thus, in *Roe* the Court found it unnecessary to enjoin compliance with the Court's declaratory judgment. *Id.* Other federal courts have declined to enter injunctions against state officials, on the assumption that the officials would in good faith honor the declaratory judgments of the courts. *E. g., Hodgson v. Anderson,* 378 F.Supp. 1008, 1019 (D.Minn.1974); *Coe v. Gerstein,* 376 F.Supp. 695, 699 (S.D.Fla.1974).

■ In the instant case a declaratory judgment was ordered entered on May 20, 1975, and it is assumed that the officials of the Commonwealth will act in accordance with the adjudication of rights as declared in that judgment. No injunction will enter at this time against the state defendants. Since injunctive relief has been denied against the state officials, the court concludes that it is inappropriate to enter any injunction against the federal defendants. The court will, however, retain jurisdiction to enter whatever orders may be necessary to effectuate the judgment already entered.